HERMAN SMITH V. STATE

No. 29,809. May 21, 1958.

William H. Scott, Jr., Marvin F. Foster, Jr., Houston, for appellant.

Dan Walton, District Attorney, Erwin G. Ernst, Benjamin

*Woodall, Thomas D. White,* Assistants District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

BELCHER, Judge.

The conviction is for murder with malice; the punishment, 13 years.

Arthur Lemons, witness for the state, testified that he spent the afternoon of the day of the shooting drinking wine and beer with Willie Louis (the deceased) and others (appellant was not present) at the residence of the deceased. About 6 p.m. Lemons went to his home two blocks away, ate, went to sleep and was awakened by the appellant who told him that the deceased was tearing up the place and abusing people and since he (Lemons) was a friend of the deceased Lemons should help restrain him. In response to the request Lemons went to the residence of Willie Louis, knocked on the door of his room, was asked who it was and he said, "Lemons—I want to talk to you," then the deceased opened the door and struck Lemons on the head with a heavy object which cut a gash in his head. Lemons told the deceased he should not have hit him; nothing further was said and Lemons returned to his house at this time with appellant following him. Lemons further testified that after deceased struck him, he made up his mind to kill the deceased but did not at any time tell the appellant of such intent. Upon arriving at his house Lemons obtained his shotgun, placed three shells in it and returned to the residence of the deceased with appellant still following, but not a word was spoken between them. Lemons found the deceased in his room asleep, decided not to kill him, and placed the gun by the door. He went into deceased's room and the appellant remained outside. After Lemons slapped the deceased and the deceased ran from the room, and while still in the room, Lemons heard a shot. After Lemons left the room he did not see the deceased, but saw the appellant standing holding the gun in his hand. Together they returned to the home of Lemons but neither said anything.

The state's testimony concerning the making and signing of appellant's written statement was sufficient to authorize its admission in evidence. It reads in part as follows:

"Arthur (Lemons) told me he was going down to Nathaniel's house because W. L. (deceased) was trying to tear up the house. I walked back down to Nathaniel's house with Arthur Lemmon. We went to the back door and as Arthur Lemmon was opening

the door to go in the house W. L. hit Arthur Lemmon over the head with a lamp. This caused Arthur's head to bleed some. Arthur turned around then and started walking back towards his house. I followed him back to the house, and he went in and got his shot gun. I saw that Arthur was going back to Nathaniel's house so I went back with him. Arthur had blood all over his face. * * * After we got back to Nathaniel's house we walked in through the back door and Arthur handed me the shot gun and then he went into the middle bedroom and pulled Willie Louis out of bed and started slapping him around, and asking him why he had hit him in the head with the lamp. Willie Louis broke loose from Arthur and walked into the kitchen. All this time I was setting in a chair in the front room, and he sort of snorted and come at me and said that he would take the shot gun away from me. I jumped up out of the chair and started backing up and telling him not to come any closer. He kept coming on so I pulled the trigger on the shot gun. When the gun fired Willie Louis turned and ran out the back door. * * * After Willie Louis ran out of the house me and Arthur Lemmon walked on back home."

A patholigist testified that he made an external and internal examination of the body of the deceased and based thereon he expressed the opinion that he had been shot in the chest with a shotgun and that the injuries inflicted thereby caused his death.

Appellant did not testify but introduced the following portion of his written statement which the state did not offer:

" 'and I was afraid that he would shoot W. L. and I thought that maybe I could stop him from doing it.' 'After we got back to Nathaniel's house we walked in through the back door and Arthur handed me the shotgun * * *' "

" 'I didn't know at the time that I had hit him. I learned this morning that Willie Louis was dead.' "

The evidence is sufficient to support the verdict of the jury.

The court charged the jury on the law of real and apparent danger as applicable to self defense.

The court submitted to the jury the issue of whether the witness Lemons was an accomplice witness.

No formal bills of exception appear in the record.

Appellant's complaint of the court's action in overruling his objections to the charge and in refusing his requested charges cannot be considered because no exception was reserved to the overruling of the objections or the refusal of the requested charges. Eldridge v. State, 162 Texas Cr. Rep. 282, 284 S.W. (2d) 734; Ayers v. State, 162 Texas Cr. Rep. 586, 288 S.W. (2d) 511; Ritchie v. State, 164 Texas Cr. Rep. 38, 296 S.W. (2d) 551; Nichols v. State, 165 Texas Cr. Rep. 600, 309 S.W. (2d) 461.

The judgment is affirmed.

Opinion approved by the Court.